# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

LEANN ROSSI, THERESA         :
MCGRUDER, ANSLEY PASCOLI,   :
DEBRA POOLE, CHERYL SMALLS,  :
and REBECCA CANADA,          :
                                  :      **CIVIL ACTION FILE**
            **Plaintiffs,**        :      **NO. 1:10-CV-4254-RWS-AJB**
                                  :
         **v.**                    :
                                  :
**FULTON COUNTY, GEORGIA,**    :
                                  :
          **Defendant.**       :

## UNITED STATES MAGISTRATE JUDGE'S ORDER AND NON-FINAL REPORT AND RECOMMENDATION

     In this action, Plaintiff Cheryl Smalls raises employment-discrimination claims against Defendant Fulton County, Georgia, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*. (Am. Compl. [Doc. 16]). Presently before the Court is Defendant's Motion for Summary Judgment as to Plaintiff Cheryl Smalls. [Doc. 160]. For the reasons set forth below, the undersigned **RECOMMENDS** that the District Judge **GRANT** the motion in full.

## I.    Background

As required when considering a motion for summary judgment, the Court has viewed the evidence and reasonable factual inferences in the light most favorable to Plaintiff, the nonmoving party.[1] *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  To the extent that material facts are in dispute, the Court has resolved the disputes in Plaintiff's favor.[2] *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003).  The Court does not, however, accept legal

---

[1]    Paragraph numbers preceded by "D" refer to Defendant's Statement of Material Facts, as to Plaintiff Cheryl Smalls, to Which There Are No Genuine Issues To Be Tried, filed in support of its motion for summary judgment, [Doc. 160-2], and paragraph numbers preceded by "P" refer to Plaintiff Cheryl Smalls' Statement of Material Facts Which Present a Genuine Issue for Trial, [Doc. 210-3], filed in opposition to Defendant's motion for summary judgment.  Plaintiff's and Defendant's responses to the statements of material fact will be designated as "Pl. Resp.," [Doc. 210-2], and "D. Resp.," [Doc. 223-1], respectively.

[2]    The Court notes that for the purposes of resolving a motion for summary judgment, "facts" may not be considered unless they are unopposed or supported by citations to admissible evidence.  *See* Fed. R. Civ. P. 56(c); LR 56.1(B).  For this reason, when the opposing party has pointed out that the evidence cited to support a factual statement is unsupportive, the Court has edited the fact to recite only the portion supported by the evidence, and in cases in which the citation is absent or unsupportive, the Court has omitted the statement of fact entirely.  (*See, e.g.*, P ¶¶ 6, 34, 46, 47, 57, 63, 167-68; D ¶¶ 12, 82, 109).

conclusions, masquerading as facts, as true.[3]  *See Day v. Taylor*, 400 F.3d 1272, 1277

(11th Cir. 2005).  The facts of the case, for the purpose of adjudicating Defendant's

motion for summary judgment, are therefore as follows.[4]

Plaintiff, who was born on June 22, 1965, is a black female over forty years of

age.  (P ¶ 1; D. Resp. ¶ 1; D ¶ 2; P. Resp. ¶ 2).  She became employed with Defendant

in February 1996 and continues to work for Defendant.    (D ¶¶ 3, 121;

P. Resp. ¶¶ 3, 121).

Plaintiff served as a Residential Property Appraiser from February 1996 until

August 2005.  (D ¶ 4; P. Resp. ¶ 4).  As a Residential Property Appraiser, Plaintiff's

duties were to collect residential data, review the data, and determine a value for the

property.  (D ¶ 5; P. Resp. ¶ 5).  Under the leadership of former Fulton County Chief

Appraiser John Cunningham, all property appraisers, including Plaintiff, were required

to assess properties in all regions of metropolitan Atlanta.  (D ¶ 6; P. Resp. ¶ 6).

_____

[3]     Accordingly, the Court has disregarded statements of material fact that
state  legal conclusions.  (*See, e.g.*, P ¶¶ 18, 19, 25, 53, 58; D ¶¶ 123, 155).

[4]     The facts recited in this section are intended to establish the context of the
case.  Additional facts pertinent to the parties' arguments will also be recited in the
discussion section below.  Statements of fact that have no apparent materiality and are
not referenced in the parties' arguments have not been included. *Cf. Ward v. United
States*, 154 F.R.D. 291, 293 (M.D. Fla. 1994) (refusing to supply argument for party).

AO 72A
(Rev.8/8
2)

Plaintiff was promoted to Senior Property Appraiser in August 2005. (D ¶ 7; P. Resp. ¶ 7). Senior Appraisers supervise Residential Appraisers and serve as the Appraisal Manager's "right hand." (D ¶ 8; P. Resp. ¶ 8). As a Senior Property Appraiser, Plaintiff was assigned the 14th District, which covers the downtown, Pittsburgh, and West End areas of Atlanta. (P ¶ 2; D. Resp. ¶ 2; D ¶¶ 9-10; P. Resp. ¶¶ 9-10). Plaintiff reported to Theresa McGruder, Manager of the 14th District, from 2005 to 2010, (P ¶ 3; D. Resp. ¶ 3; D ¶ 13; P. Resp. ¶ 13), and supervised eight to twelve Residential Property Appraisers, (P ¶¶ 4, 180; D. Resp. ¶¶ 4, 180; D ¶ 11; P. Resp. ¶ 11).

Although Plaintiff had tools and equipment necessary to do her job, they were "pretty old," and between 2006 and 2010, she made several verbal requests for new equipment, such as cameras, map books, and measuring tapes. (P ¶ 67; D. Resp. ¶ 67; D ¶¶ 66-67, 69; P. Resp. ¶¶ 66-67, 69). Requests for tools and equipment were made to McGruder, who then submitted the request to Tony George, the Assistant Chief Appraiser. (P ¶¶ 68, 171, 177; D. Resp. ¶¶ 68, 171, 177; D ¶¶ 20, 68; P. Resp. ¶¶ 20, 68). All of Plaintiff's requests for new equipment were denied. (P ¶¶ 65-66, 68-69; D. Resp. ¶¶ 65-66, 68-69; D ¶¶ 66-67; P. Resp. ¶¶ 66-67). However, George hired several younger male employees who received equipment and

4

supplies whenever they needed them. (D ¶ 72; P. Resp. ¶ 72; P ¶¶ 8-12; D. Resp. ¶¶ 8-12).

When Plaintiff requested time off, it was initially approved by McGruder but George then denied it. (P ¶ 14; D. Resp. ¶ 14). Plaintiff complained to McGruder about being denied the tools she needed for her job and being denied time off. (P ¶¶ 15-16, 176; D. Resp. ¶¶ 15-16, 176).

When Plaintiff's supervisors made property-value decisions and told her to sign off on them, Plaintiff wrote "per management" on those valuations, as George had directed the staff to do. (P ¶ 26; D. Resp. ¶ 26; D ¶ 98; P. Resp. ¶ 98). Sometime prior to January 2010, the Board of Assessors decided that appraisers were no longer to write "per management" or the like on valuation memos presented to them, (D ¶ 72; P. Resp. ¶ 72), and Plaintiff was informed that she would no longer be allowed to write "per management" on property values that she did not agree with, (P ¶ 27; D. Resp. ¶ 27). Douglas Kirkpatrick, who as Deputy Chief Appraiser was responsible for the day-to-day operations of the residential division of the Fulton County Tax Assessors' Office, had determined that Plaintiff would not be allowed to write "per management" on property valuations. (D ¶¶ 22-25; P. Resp. ¶¶ 22-25; P ¶ 28; D. Resp. ¶ 28).

AO 72A
(Rev.8/8
2)

In January 2010, Kevin Maxey became Manager of the 14th District, and Plaintiff began reporting to him. (D ¶ 14; P. Resp. ¶ 14). On January 26, 2010, Plaintiff complained to Maxey that she disagreed with property assessments to which she was asked to sign her name. (D ¶ 79; P. Resp. ¶ 79). Maxey warned Plaintiff that she would be reprimanded if she did not agree with the assessments presented. (P ¶ 20; D. Resp. ¶ 20; D ¶ 81; P. Resp. ¶ 81). On February 5, 2010, Kirkpatrick held a meeting to inform the staff that they could no longer write "per management" on the memos. (D ¶¶ 97, 135; P. Resp. ¶¶ 97, 135). Plaintiff spoke out against the directive but complied with it. (D ¶ 158; P. Resp. ¶ 158; Pl. Dep. at 60). However, Maxey also wrote up Plaintiff for refusing to put her name on assessments she disagreed with. (P ¶ 167; D. Resp. ¶ 167).

On February 15, 2010, Plaintiff was reassigned from the downtown Atlanta location to the North District in Alpharetta, Georgia.[5] (P ¶ 56; D. Resp. ¶ 56; D ¶ 50; P. Resp. ¶ 50). Plaintiff did not request the transfer to the North District. (P ¶ 6; D. Resp. ¶ 6; Deposition of Cheryl Smalls ("Pl. Dep.") [Doc. 190] at 25).

---

[5]     The parties use several different designations to refer to the Alpharetta office. *See, e.g.*, P ¶¶ 6 ("North District"), 17 ("north office"), 48 ("north region"). For the sake of simplicity, unless it is directly quoting language presented by the parties, the Court will refer to the Alpharetta office as the "North District."

AO 72A
(Rev.8/8
2)

Kirkpatrick made the decision to transfer her. (P ¶¶ 24, 98; D. Resp. ¶¶ 24, 98). After Plaintiff's reassignment, Brian Gardner, a male who was younger than Plaintiff, was transferred from the North District to fill the Senior Appraiser vacancy in the 14th District. (P ¶ 74; D. Resp. ¶ 74; D ¶¶ 145, 154; P. Resp. ¶¶ 145, 154; P ¶ 7; D. Resp. ¶ 7).

Before Plaintiff's transfer, the North District had a vacant Senior Appraiser position and only one other Senior Appraiser. (D ¶¶ 103-04, 124; P. Resp. ¶¶ 103-04, 124). Tim Brown, the Appraisal Manager of the North District, had requested an experienced Senior Appraiser because of the workload and complexity of the properties in that region. (D ¶ 104; P. Resp. ¶ 104). Brown did not specifically request that Plaintiff be assigned to the position. (P ¶ 48; D. Resp. ¶ 48). Nevertheless, Kirkpatrick decided to reassign Plaintiff and told Plaintiff that she was needed in the North District. (D ¶¶ 99, 101; P. Resp. ¶¶ 99, 101; Pl. Dep. 63). Plaintiff's reassignment filled the vacancy in the North District. (D ¶ 130; P. Resp. ¶ 130).

Plaintiff's pay and benefits remained the same, but after the transfer, Plaintiff supervised only two or three appraisers. (P ¶¶ 71, 180; D. Resp. ¶¶ 71, 180; D ¶¶ 52, 137-39; P. Resp. ¶¶ 52, 137-39). The reassignment also lengthened Plaintiff's commute, resulting in higher fuel and auto-maintenance costs, and requiring her to

AO 72A
(Rev.8/8
2)

leave home an hour earlier to get to work. (P ¶¶ 35, 37, 59-61; D. Resp. ¶¶ 35, 37, 59-61; D ¶¶ 137-38, 141; P. Resp. ¶¶ 137-38, 141; Pl. Dep. at 92). Plaintiff did not like the drive, and she ceased using Defendant's fitness center because she was exhausted from being in traffic. (P ¶¶ 41, 62; D. Resp. ¶¶ 41, 62; D ¶¶ 139-40; P. Resp. ¶¶ 139-40).

On February 22, 2010, Plaintiff filed a grievance in which she alleged that the reassignment to the North District was retaliation inflicted upon her by Kirkpatrick and Maxey "[d]ue to [her] willingness to practice [her] rights to freedom of speech within the workplace and [her] rights according to O.C.G.A. [§] 45-1-4."[6] (P ¶ 17; D. Resp. ¶ 17; D ¶¶ 157, 159, 162; P. Resp. ¶¶ 157, 159, 162; Pl. Dep. at 30 & Exh. 2 [Doc. 190-1 at 3]). The grievance did not allege age or gender discrimination. (D ¶¶ 165-66; P. Resp. ¶¶ 165-66).

Burton Manning, Chief Appraiser of the Tax Assessor's Office at the time, reviewed Plaintiff's grievance and instructed her that her reassignment to the North District would stand. (P ¶ 164; D. Resp. ¶ 164; D ¶¶ 15-16, 167;

_____

[6] O.C.G.A. § 45-1-4 concerns fraud, waste, and abuse in state programs and operations and, among other things, proscribes retaliation by public employers against public employees who disclose a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

8

AO 72A
(Rev.8/8
2)

P. Resp. ¶¶ 15-16, 167).  The Grievance Review Committee, which had no members

from the Tax Assessor's Office, heard Plaintiff's grievance on June 3, 2010. (D ¶¶ 168,

173; P. Resp. ¶¶ 168, 173).  On July 15, 2010, the committee denied the grievance,

finding that "the Fulton County Tax Assessor did not err in their practices and

procedures," and that Plaintiff's "transfer to the Alpharetta office was conducted by the

Department in accordance with Fulton County Personnel Rules and Regulations."

(D ¶¶ 169-71; P. Resp. ¶¶ 169-71).  The committee also found no evidence of the

retaliation Plaintiff alleged.  (D ¶ 172; P. Resp. ¶ 172).

Plaintiff filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") on August 2, 2010.[7]  (D ¶ 174; P. Resp. ¶ 174).

In the section of the form indicating the cause of the alleged discrimination, Plaintiff

checked the boxes marked "sex" and "age."  (Pl. Dep. Exh. 1 [Doc. 190-1 at 1]).  She

also indicated that the discrimination took place starting on February 5, 2010.  *Id*.  The

particulars of Plaintiff's charge were as follows:

> I am a Black Female 45 years of age.  My employer for approximately
> fourteen (14) years has been the Fulton County Tax Assessors Office
> ("FCTA").  Most recently, I was a Senior Property Appraiser-Residential
> in the 14th District office (Pryor Street) until, on February 5, 2010, I was

---

[7]    The EEOC assigned the matter Charge No. 410-2010-04354.
(Pl. Dep. Exh. 1 [Doc. 190-1 at 1]).

AO 72A
(Rev.8/8
2)

informed without warning that I was being transferred to the North office in Roswell, Georgia (effective February 5, 2010).

On January 26, 2010, I complained directly to my immediate supervisor, Residential Manager Kevin Maxey (Black Male), in a staff meeting that I disagreed with assessments to which I was asked to sign my name. Maxey warned me that I would be reprimanded if I did not fill in the blanks and agree with the assessments.

On February 5, 2010, Doug Kirkpatrick (White Male, over 40), Deputy Chief Appraiser, called me in and told me that I could no longer write "per management" on the assessment memoranda. He was hostile and angry. After that meeting, he informed me that, effective February 15, 2010, I was being transferred to the North office in Roswell.

While a Senior Property Appraiser in the Pryor Street location, I supervised anywhere from eight to twelve people. In the North location, I currently supervise only two people.

I reside in the south side of the Atlanta metropolitan area. Both my travel to and from work and the amount I need to pay for gasoline have increased greatly since I have been transferred and have effectively diminished my net take-home pay.

My replacement as the Senior Property Appraiser-Residential in the Pryor Street location is Brian Gardner (Black Male), who is younger than me. Mr. Gardner, who had no prior experience as a Senior Property Appraiser, was promoted into the position after my departure.

I believe that I have been discriminated against on the basis of my sex in violation of Title VII of the 1964 Civil Rights Act and my age in violation of the Age Discrimination in Employment Act of 1967.

AO 72A
(Rev.8/8
2)

(*Id*. at 2).  On November 18, 2010, the EEOC issued a notice of right to sue in which it explained that it was terminating its processing of the charge because it was unlikely that it would be able to complete the administrative processing within 180 days from the filing of the charge.  [Doc. 1-1 at 29].

Plaintiff, along with McGruder and three others, filed suit on December 30, 2010.[8]  [Doc. 1].  Plaintiff Smalls raises claims in only Count Two and Count Three.  (*See* Am. Compl., *passim*).  She alleges in Count Two that Defendant violated the ADEA when it denied her "tools and privileges of employment while younger employees were given such tools and privileges."  (*Id*. ¶ 200).  Specifically, Plaintiff asserts that "[y]ounger employees were treated better and more professionally, given tools they needed, given time off, given more training, and received more promotions and benefits despite less experience" and that she "was transferred based on her age and replaced with a substantially younger employee, upon information and belief."  (*Id*).  She alleges in Count Three that Defendant committed gender discrimination in violation of Title VII.  She asserts that she "was forced to sacrifice professional standards while male employees were not," that "[m]ale employees were

---

[8]     On March 21, 2011, the Court granted leave to add a sixth plaintiff.  [Doc. 10].

11

treated more professionally, given the tools they needed, given time off, given more training, received more promotions and afforded more benefits, while Plaintiff Smalls and other females suffered," and that Plaintiff "was discriminatorily transferred and replaced with a male employee." (*Id*. ¶ 212). She also generally avers that "Plaintiffs were treated differently, harassed, humiliated, abused, insulted, ignored, transferred, demoted, reduced in status and responsibility, denied promotions, disciplined, terminated, retaliated against and otherwise discriminated against by Defendant's officers and management based on their gender." (*Id*. ¶ 215). Defendant moves for summary judgment on all of Plaintiff's claims. [Doc. 160].

## II.    *Standard of Review*

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Only when that burden has been met does the burden shift to the non-moving

party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL, Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999).

13

### III. Legal Framework

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee for her participation in certain statutorily protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a); *see also Biniashvili v. Bohne*, 397 Fed. Appx. 597, 598-99 (11th Cir. Sept. 28, 2010).

The ADEA likewise makes it unlawful for an employer, *inter alia*, "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA also prohibits discrimination against any employee because she "has opposed any

14

practice made unlawful by this section, or because such individual . . . has made a charge, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). The Eleventh Circuit Court of Appeals has held that the same "principles governing the order and allocation of proof in cases arising under Title VII" apply to claims arising under the ADEA as well. *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).

A plaintiff asserting a disparate-treatment discrimination claim under Title VII can support her claim either by direct or circumstantial evidence. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). If direct evidence of intentional discrimination does not exist or is insufficient, a plaintiff may offer circumstantial evidence, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lawver v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 772 (11th Cir. Nov. 24, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998)).

> This framework requires the plaintiff to establish a *prima facie* case of discrimination, and then the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employment action it took. The burden then shifts back to the plaintiff to demonstrate that the proffered reason was pretextual. The plaintiff can establish pretext by showing that the employer's non-discriminatory reason should not be believed, or, when considering all the evidence, that it is more likely that

15

the discriminatory reasons motivated the decision than the employer's proffered reasons.

*Lawver*, 300 Fed. Appx. at 772 (citations omitted).

"The methods of presenting a prima facie case are flexible and depend on the particular situation." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)). Generally speaking, to satisfy a *prima facie* case for a disparate-treatment claim based on circumstantial evidence, a plaintiff must show: " '(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job.' " *Brown v. Jacobs Eng'g, Inc.*, 401 Fed. Appx. 478, 479-80 (11th Cir. Oct. 28, 2010) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Regarding pretext,

A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason.

AO 72A
(Rev.8/8
2)

*Alvarez*, 610 F.3d at 1265-66 (alteration in original) (quoting *Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000) (internal quotation marks omitted)). To avoid summary judgment, a plaintiff " 'must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination.' " *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala*., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Clark v. Coats & Clark, Inc*., 990 F.2d 1217, 1228 (11th Cir. 1993)). In other words, a plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

## IV.    *Discussion*

Defendant moves for summary judgment on all of Plaintiff's claims on the grounds that Plaintiff cannot establish a *prima facie* case of age or gender discrimination or retaliation. [Doc. 160-1 at 3]. Specifically, Defendant argues that there is no evidence the Plaintiff was subjected to an adverse employment action or that someone outside of her protected class was treated more favorably. [*Id*. at 5, 13-14, 18]. It also contends that Plaintiff did not engage in protected activity

AO 72A
(Rev.8/8
2)

until after Defendant's allegedly discriminatory conduct took place and that Plaintiff therefore cannot prove the causation element of any retaliation claim she may intend to raise. [*Id*. at 17-19]. Defendant further argues that even if Plaintiff could establish a *prima facie* case of discrimination or retaliation with regard to the claims arising from her allegedly wrongful transfer, Defendant can overcome the inference of discrimination with legitimate nondiscriminatory reasons for the transfer decision. [*Id*. at 7-8, 14-15].

Plaintiff, in response, contends that she has established *prima facie* claims of age and gender discrimination and that Defendant "has not proffered actionable evidence in support of its alleged 'legitimate non-discriminatory reasons' for the adverse employment actions" Plaintiff suffered. [Doc. 210-1 at 2]. She also argues that summary judgment should be denied because she has presented "significantly probative evidence of pretext."[9] [*Id*.].

_____

[9]     Plaintiff also argues that she has established a *prima facie* case of racial discrimination under Title VII, asserting, without citing any evidence, that "non-black employees enjoyed the use of terms, conditions and privileges of employment[, but that] Smalls was denied those privileges by Defendant." [Doc. 210-1 at 7-8]. Aside from the fact that three of Plaintiff Smalls's white co-plaintiffs claim in Count Four that they suffered race discrimination because Defendant denied them tools and privileges of employment that black employees were given, (Am. Compl. ¶ 220), a contradictory pleading that the undersigned does not hold against Plaintiff Smalls, there are at least two reasons it would be improper for the Court to consider such a claim at this stage of

Defendant's arguments and Plaintiff's responses are discussed in further detail below. The Court first addresses the arguments regarding Plaintiff's ability to establish a *prima facie* case of retaliation or disparate treatment. It then looks to the arguments regarding pretext.

---

the litigation. First, Plaintiff did not raise such a claim in her pleadings, (*see* Am. Compl., *passim*), and has not filed a motion to amend the complaint to include such a claim, [*see* Dkt.]. Eleventh Circuit precedent precludes a plaintiff from amending her pleadings via arguments raised in her summary judgment brief. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (concluding that after plaintiff proceeded through discovery without seeking to amend complaint to raise new claim, plaintiff "was not entitled to raise it in the midst of summary judgment"); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Second, Plaintiff did not claim race discrimination in the charge of discrimination she filed with the EEOC. (Pl. Dep. Exh. 1 [Doc. 190-1 at 1-2]). Generally, before filing a Title VII action, a plaintiff must exhaust her administrative remedies by raising the allegations of discrimination in a charge of discrimination filed with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (noting that the purpose of this exhaustion requirement is to allow the EEOC to have "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts"); *see also Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (holding that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination") (internal quotation and citation omitted). For both of these reasons, the undersigned **RECOMMENDS** to the District Judge that to the extent Plaintiff intends to raise claims of Title VII race-based discrimination in this action that those claims be **DISMISSED** as a matter of law.

## A.     Prima Facie Case

Because it presents the simpler issue, the undersigned first considers whether any retaliation claims Plaintiff may have raised should be resolved on summary judgment and then addresses the disparate-treatment claims.

### 1.     Retaliation

It is, at best, questionable whether Plaintiff intended to raise a retaliation claim in this matter.  She does not join in Count Five of the amended complaint, in which four of her co-plaintiffs expressly allege that Defendant retaliated against them in violation of Title VII.  (*See* Am. Compl. at 55-56).  Nor did she expressly allege a claim of retaliation in her EEOC charge of discrimination. (Pl. Dep. Exh. 1 [Doc. 190-1 at 1-2]). However, because the Title VII gender-discrimination claim raised in Count III includes a general allegation that Defendant retaliated against all of the plaintiffs, Defendant, out of an abundance of caution, included in its motion for summary judgment an argument that Plaintiff cannot show evidence establishing a *prima facie* case of retaliation.  [Doc. 160-1 at 16].

To establish a *prima facie* case for a retaliation claim, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse

AO 72A
(Rev.8/8
2)

action[10]; and (3) there was a causal link between the two. *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010); *see also Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000); *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).  To satisfy the first element, a plaintiff need not prove the underlying claim of discrimination that led to his protected activity; it is sufficient if he had "a reasonable good faith belief that the discrimination existed." *Holifield*, 115 F.3d at 1566; *see also Standard*, 161 F.3d at 1328 ("[I]t is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute.").  As for the second element, a materially adverse action is one that " 'well might have

---

[10]      In *Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008), the Eleventh Circuit recognized that the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), broadened the type of employer conduct considered actionable in a retaliation claim, from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related. *Crawford*, 529 F.3d at 973.  Therefore, as result of *Burlington Northern* and *Crawford*, the Court concludes that it is inappropriate to refer to this element as the adverse employment action element. *Burlington Northern* explicitly states that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern*, 548 U.S. at 67.  The Court's decision merely requires the employee to show that a reasonable employee would have found the challenged action materially adverse, meaning the reasonable worker would be dissuaded from making or supporting a charge of discrimination. *Id*. at 68 (quotation marks and citations omitted).  Thus, it is more appropriate to refer to the "adverse employment action" element as the "materially adverse action" element.

AO 72A
(Rev.8/8
2)

dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Reeves v. DSI Sec. Servs., Inc*., 395 Fed. Appx. 544, 547 (11ᵗʰ Cir. Aug. 31, 2010) (quoting *Burlington Northern*, 548 U.S. at 68). " '[P]etty slights, minor annoyances, and simple lack of good manners' generally do not rise to the level of materially adverse actions." *Reeves*, 395 Fed. Appx. at 547 (quoting *Burlington Northern*, 548 U.S. at 68). To satisfy the third prong, Plaintiff is only required to show that the "protected activity and the adverse action were not wholly unrelated." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180, n.30 (11ᵗʰ Cir. 2003) ("[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse action.") (alteration and citation omitted); *see also Shotz*, 344 F.3d at 1180, n.30 (citing *Wideman v. Wal-Mart Stores, Inc*., 141 F.3d 1453, 1457 (11ᵗʰ Cir. 1998) (one month between protected activity and adverse action supports finding of causation)). Here, it is clear that even if Plaintiff's retaliation claim was properly asserted, it fails on the first element.

In its motion for summary judgment, Defendant points out that all of the adverse activity Plaintiff complains of occurred before Plaintiff filed her grievance and her EEOC claim. [Doc. 160-1 at 17-19]. Plaintiff, in response, does not argue that any

22

adverse actions took place after she filed her grievance or EEOC claim; rather, she argues that she "had engaged in protected activity when she spoke out against incorrect property valuations." [Doc. 210-1 at 5 (*see also* D ¶ 143; P. Resp. ¶ 143 (asserting that Kirkpatrick and Maxey wanted Plaintiff out of the 14th District because she was aware of the values being reduced and spoke out against it))]. Indeed, the record shows that Plaintiff spoke out about incorrect property valuations on January 26, 2010, (D ¶ 79; P. Resp. ¶ 79), and that she was transferred only a few weeks later on February 15, 2010, (P ¶ 56; D. Resp. ¶ 56; D ¶ 50; P. Resp. ¶ 50).

This, however, is not the sort of statutorily protected activity that may be vindicated under Title VII's anti-retaliation clause. Under the anti-retaliation clause of Title VII, it is an unlawful employment practice "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by *this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under *this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added). The allegedly statutorily protected activity upon which Plaintiff bases her putative retaliation claim is not activity related to opposing employment discrimination based on "race, color, religion, sex, or national origin"—the province of Title VII,

23

42 U.S.C. § 2000e-2(a)(1)—but instead is activity that may have been protected under O.C.G.A. § 45-1-4. (*See* P ¶ 17; D. Resp. ¶ 17; D ¶¶ 157, 159, 162; P. Resp. ¶¶ 157, 159, 162; Pl. Dep. at 30 & Exh. 2 [Doc. 190-2 at 3]).

For this reason, the undersigned finds that Plaintiff has failed to proffer evidence sufficient to enable a reasonable factfinder to determine that the activity she alleges forms the basis for her putative retaliation claim is activity protected under Title VII. The undersigned therefore **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment on any Title VII retaliation claim Plaintiff may have intended to raise.

### 2.    *Disparate Treatment*

Defendant also asserts that Plaintiff has not shown direct evidence of age or gender discrimination and cannot proffer circumstantial evidence sufficient to state a *prima facie* case of age or gender discrimination. [Doc. 160-1 at 3-4]. As noted above, to state a disparate-treatment claim under Title VII based on circumstantial evidence, a plaintiff must show: " '(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job.' " *Brown*, 401 Fed. Appx. at 479-80 (quoting *Maniccia*, 171 F.3d at 1368). Similarly, a plaintiff

24

establishes a *prima facie* case of age discrimination under the ADEA if she shows: "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (citations omitted)).

Defendant does not challenge Plaintiff's membership in a protected class or question whether she was qualified to do her job. [Doc. 160-1, *passim*]. It does, however, argue that Plaintiff's disparate-treatment claims fail because there is no evidence that Plaintiff was subjected to an adverse employment action or that someone who was outside Plaintiff's protected gender class or who was substantially younger than Plaintiff was treated more favorably. [*Id.* at 5].

Plaintiff, in response, contends that she was subjected to adverse employment actions and that younger males were treated more favorably when she was "transferred to the North Office [and] replaced by a much younger male, Brian Gardner," [Doc. 210-1 at 2], and when George denied her requests for "equipment

AO 72A
(Rev.8/8
2)

necessary to perform her job" but the "same equipment was then given to younger males in the office." [*Id*. at 3]. Plaintiff contends that the transfer was an adverse employment action because it involved "arduous travel" that increased her commuting costs and because it reduced her supervisory responsibilities by allowing her to supervise only three employees rather than ten to twelve employees as she had in the 14th District. [*Id*. at 6-7 (citing *Doe v. DeKalb Cnty. Sch. Dist*., 145 F.3d 1441, 1452 (11th Cir. 1998) (noting in a disparate-treatment case brought under Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., that "[t]ransfers that result in lesser pay, responsibilities, or prestige [] will still be 'adverse' ") (collecting cases)]. She further argues that the denial of equipment was "in direct violation of the law as established in *Hishon v. King & Spalding*, 467 U.S. 69, 75 [(1984)]" as an impermissible discriminatory denial of a benefit or "privilege of employment" under Title VII. [Doc. 210-1 at 3-4].

In reply, Defendant contends that Plaintiff's age-related discriminatory-transfer claim fails because she cannot show that Gardner was "substantially younger" than Plaintiff or that he "replaced" Plaintiff. [Doc. 223 at 2, 4-5 & n.4]. It also argues that all of Plaintiff's disparate-treatment claims are subject to summary judgment because neither the transfer nor the denial of equipment are sufficiently "objectively serious or

26

tangible" to rise to the level of an "adverse employment action," citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)[11]; *Wideman*, 141 F.3d at 1456. [Doc. 223 at 2-4].

### 1. Replacement Due to Age

#### a. Whether Gardner "Replaced" Plaintiff

The Court first notes that it is not persuaded by Defendant's argument that Plaintiff was not "replaced" by Gardner. In support of the argument, Defendant explains that each employment position in Fulton County is assigned a unique position identification number, (D ¶ 112; P. Resp. ¶ 112). [Doc. 160-1 at 8]. That unique number corresponds to and identifies the position for personnel tracking purposes, (D ¶ 113; P. Resp. ¶ 113). [Doc. 160-1 at 8]. Accordingly, the number follows the position and not the employee in the position, (D ¶ 114; P. Resp. ¶ 114). [Doc. 160-1 at 8]. If an employee is reassigned to another office location, the position number follows the employee along with the position, (D ¶ 115; P. Resp. ¶ 115). [Doc. 160-1 at 8]. Similarly, if an employee vacates his or her position in a particular

---

[11] *Gupta* was overruled in part by *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). *Cramer v. Bojangles' Rests., Inc.*, Civ. Action No. 2:10-CV-0159-RWS-SSC, 2012 WL 716176, at *4 n.5 (N.D. Ga. Feb. 8, 2012) (Cole, M.J., *adopted at* 2012 WL 716028 by Story, J.).

AO 72A
(Rev.8/8
2)

office location and another employee is reassigned to fill the vacancy, the employee filling the vacancy would keep the same position number associated with the position he or she was in before the reassignment, (D ¶ 116; P. Resp. ¶ 116). [Doc. 160-1 at 8-9]. In contrast, if an employee is promoted or demoted to a different position, the employee would then be assigned the unique position number associated with the new position, (D ¶ 117; P. Resp. ¶ 117). [Doc. 160-1 at 9]. Defendant also shows that at least as of February 19, 2011, Plaintiff served as a Senior Appraiser in position number 0011093 and still holds the position today, (D ¶¶ 120-21; P. Resp. ¶¶ 120-21), and that Gardener's position number is 0012177, (D ¶ 122; P. Resp. ¶ 122). [Doc. 160-1 at 9]. Although the argument is not entirely clear, it appears that Defendant is contending that this shows that when Plaintiff was reassigned to the North District, she was not replaced by Gardner or anyone else. [*See* Doc. 160-1 at 8].

The undersigned finds this argument unconvincing for two reasons. First, it is unclear why Fulton County's internal tracking system would have any relevance to Plaintiff's discriminatory-transfer claims. The claims arise from Plaintiff's reassignment from the 14th District to the North District; regardless of whether a "unique position identification number" moved along with Plaintiff, the facts at this

28

stage of the case show that as of February 15, 2010, Plaintiff was reassigned from the 14th District to the North District, (P¶ 24; D. Resp. ¶ 24), and Gardner was promoted to Senior Appraiser and transferred to fill the opening in the 14th District, (P ¶¶ 74, 76; D. Resp. ¶¶ 74, 76; D ¶¶ 111, 146; P. Resp. ¶¶ 111, 146). Making all reasonable inferences in Plaintiff's favor, as the Court must on a motion for summary judgment, the undersigned finds that these facts are sufficient to enable a reasonable factfinder to determine that Gardner replaced Plaintiff after she was transferred from the 14th District. Defendant's argument includes no citations to law and does not proffer any other reason Plaintiff should not enjoy this legal presumption. [*See* Doc. 160-1 at 8-9; Doc. 223 at 4 & n.4].

Second, even if the position identification numbers did have some legal effect, the facts Defendant proffers have nothing to do with Plaintiff's transfer. Defendant shows that *as of February 19, 2011*, Plaintiff held position number 0011093, the position she still holds today. (D ¶¶ 120-21; P. Resp. ¶¶ 120-21). February 19, 2011, fell more than a year after Plaintiff's February 15, 2010, transfer. (*See* D ¶ 50; P. Resp. ¶ 50). Consequently, the fact that the unique position identification number assigned to Plaintiff's position on February 19, 2011, is the same number her position is assigned today sheds no light at all on the circumstances of

29

Plaintiff's transfer. For these reasons, the undersigned is unpersuaded by Defendant's argument that Gardner did not "replace" Plaintiff after her transfer.

### b. Whether Gardner was "Substantially Younger"

Defendant's argument that Gardner was not "substantially younger" also fails to convince the Court that Plaintiff cannot make out a *prima facie* case of age discrimination. To succeed on an ADEA claim, the plaintiff must show that she was replaced by someone "substantially younger." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Plaintiff was born on June 22, 1965, (D ¶ 2; P. Resp. ¶ 2), and Gardner was born on October 3, 1969, (D ¶ 24; P. Resp. ¶ 24); thus, Plaintiff is approximately four years and three months older than Gardner.

The Supreme Court has stated hypothetically that "the replacement of a 68-year-old by a 65-year-old" would be "thin evidence" of age-related discriminatory animus. *O'Connor*, 517 U.S. at 313. However, the Eleventh Circuit has found that a plaintiff showing that she was replaced by a person who was four years younger had presented a *prima facie* case of age discrimination under *McDonnell Douglas*. *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir. 1989) (noting that "age is a continuum along which the distinctions between employees are often subtle and relative" and

AO 72A (Rev.8/8 2)

finding that replacement of a fifty-year-old with a forty-six-year-old was sufficient to establish a *prima facie* case of age discrimination) (internal quotation marks omitted). Given this precedent, the undersigned cannot recommend granting any portion of Defendant's motion for judgment on the ground that Gardner was not "substantially younger" than Plaintiff within the context of an ADEA claim.

### 2. *Adverse Employment Action*

Plaintiff contends that she suffered adverse employment actions when Defendant denied her requests for new equipment and transferred her from the 14th District to the North District. [Doc. 210-1 at 3, 5-7]. Defendant, in turn, argues that neither the transfer nor the denial of equipment were sufficiently "objectively serious or tangible" to rise to the level of an "adverse employment action." [Doc. 223 at 2-4].

The Eleventh Circuit Court of Appeals has explained the law on adverse employment actions as follows:

> Whatever the benchmark, it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way. Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment. We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms,

31

AO 72A
(Rev.8/8
2)

> conditions, or privileges of employment. Moreover, the employee's
> subjective view of the significance and adversity of the employer's action
> is not controlling: the employment action must be materially adverse as
> viewed by a reasonable person in the circumstances.

*Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in

original).

### a.     Denied Requests for Equipment

Here, it is clear that the denied requests for equipment did not constitute adverse

employment actions. Plaintiff admits that she was provided with equipment necessary

for her to perform her job; instead she claims that she suffered a materially adverse

employment action when she was denied "newer equipment."

(D ¶¶ 66-69; Pl. Resp. ¶¶ 66-69). She contends that this constituted denial of

"privileges of employment," as proscribed in *Hishon*. [Doc. 210-1 at 3 (citing *Hishon*,

467 U.S. at 75)].

*Hishon*, however, provides a weak analogy to Plaintiff's claims in this case. The

Plaintiff in *Hishon* was an associate attorney passed over for partnership in her law firm

and consequently terminated. *Hishon*, 467 U.S. at 72. The Court determined that the

plaintiff had adequately stated a Title VII claim for discriminatory denial of privileges

of employment based on allegations that "would support the conclusion that the

opportunity to become a partner was part and parcel of an associate's status as an employee"—namely that the employer "used the prospect of ultimate partnership to induce young lawyers to join the firm" and that it was known among the associates that they "could regularly expect to be considered for partnership at the end of their 'apprenticeships.' " *Id*. at 76. To analogize *Hishon* to the case at hand, the Court would have to find that the promise of receiving new equipment was a primary factor inducing Plaintiff to work for Defendant, such that it became "a term, condition, or privilege of her employment." *See id*. at 75-76. Plaintiff proffers no facts to show that receipt of new equipment was so central to her employment with Defendant. Nor does Plaintiff cite any cases in which a court found that a plaintiff provided with tools adequate to do her work suffered an adverse employment action by being denied "newer" tools. As a result, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** summary judgment to Defendant on the disparate-treatment claims arising from Defendant's refusal to provide Plaintiff with new equipment.

### b. Transfer

It is likewise apparent that Plaintiff's transfer from the 14th District to the North District did not constitute an adverse employment action within the context of a Title VII disparate-treatment claim. The transfer at issue involves a location-to-location

33

transfer, not a transfer to a different position, therefore suggesting that Plaintiff is complaining about a lateral transfer decision. A lateral transfer that does not involve a reduction in pay, responsibilities, or prestige is not an adverse employment action. *Doe*, 145 F.3d at 1452. Although Plaintiff states that the transfer lengthened her commute to work, thereby increasing her fuel and auto-maintenance costs, Plaintiff admits that the transfer did not involve a reduction in pay or benefits. (D ¶¶ 137-39; P. Resp. ¶¶ 137-39). There are also no allegations that the transfer resulted in a drop in prestige.

Plaintiff does allege that the transfer involved a reduction in responsibilities, in that prior to the transfer, she supervised eight to twelve employees and after the transfer, she supervised only two or three. (P ¶¶ 71, 180; D. Resp. ¶¶ 71, 180; D ¶ 52; P. Resp. ¶ 52). The undersigned finds, however, that this is insufficient to establish that Plaintiff suffered an adverse employment action. Again, to constitute an adverse employment action, the employer's action must severe and material and is judged objectively from the view of a reasonable employee. *Davis*, 245 F.3d at 1239. "An employment action [] is not adverse merely because the employee dislikes it or disagrees with it." *Collier v. Clayton Cnty. Cmty. Serv. Bd.*, 236 F. Supp. 2d 1345, 1378 (N.D. Ga. 2002) (Carnes, J.) (finding that, where there was

no reduction in pay or title, reduction in plaintiff's supervisory responsibility from approximately 280 employees to ten did not constitute adverse employment action). *Compare Robertson v. Ala. Dep't of Econ. & Cmty. Affairs*, 902 F. Supp. 1473, 1481 (M.D. Ala. 1995) (finding genuine issue of material fact as to adverse action where defendant transferred plaintiff from office building to warehouse, moved her from supervisory position to one with no subordinates, substantially increased her workload, and changed her performance evaluation from high marks to "meets standards" when she fell behind). The relatively small reduction in supervisory responsibility about which Plaintiff complains is simply too mild to be reasonably considered a serious and material change in her employment.

Plaintiff's allegation that the increased travel to work was "arduous" and required her to leave for work an hour early every day is also insufficient to establish that the transfer was an adverse employment action. "[A]n overwhelming number of federal courts"—including judges in this District—"have held that a reassignment or transfer which results in an increased commute, without more, is not objectively serious and tangible enough to meet the threshold of substantiality." *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1136-38 (N.D. Ga. 2004) (Duffey, J.) (citing, among other cases, *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527 (10th Cir.1998) (holding that reassignment

AO 72A
(Rev.8/8
2)

which increased employee's commute time from five or seven minutes to between thirty and forty minutes does not amount to an adverse employment action); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (holding that "however unpalatable the prospect may have been to [the employee]," a reassignment which required employee to move from Denison, Iowa to Omaha, Nebraska did not rise to the level of an adverse employment action); *Anzaldua v. Chicago Transit Auth.*, No. 02-02902, 2002 WL 31557622, at *4 (N.D. Ill. Nov. 15, 2002) (holding reassignment that "added up to an hour and a half each way to [the plaintiff's] daily commute" was insufficient to establish adverse employment decision); *Baker v. Ala. Dep't of Pub. Safety*, 296 F. Supp. 2d 1299, 1308 (M.D. Ala. 2003) ("Where the changed work location does not even require one to change residences, these transfers generally merely create an inconvenience, which for purposes of Title VII is not actionable."); *Slay v. Glickman*, 137 F. Supp. 2d 743, 752 (S.D. Miss. 2001) (holding that reassignment requiring a three-hour commute did not constitute a "tangible employment action" in Title VII sexual harassment context)); *see also Harper v. ULTA Salon Cosmetics & Fragrance, Inc.*, Civ. Action File No. 1:05-CV-1285-TWT-AJB, 2007 WL 528088, at *33 (N.D. Ga. Feb. 13, 2007) (Thrash, J., *adopting* Baverman, M.J.) (finding that a transfer adding fifteen minutes to the employee's commute was not

an adverse employment action); *but see Johnson v. Fla. Dep't of Corrs.*, No. 3:04-CV-522-J-25HTS, 2007 WL 4404209, at \*6 (M.D. Fla. Feb. 22, 2007) (denying summary judgment on a retaliation claim on the grounds that the temporary transfer "created childcare problems").

For all of these reasons, the undersigned finds that Plaintiff's transfer from the 14th District to the North District did not constitute an adverse employment action. The undersigned therefore **RECOMMENDS** to the District Judge that he **GRANT** summary judgment to Defendant on the disparate-treatment claims related to Plaintiff's transfer.

### B.    Pretext

Defendant also argues that it had legitimate nondiscriminatory reasons for transferring Plaintiff and that there is no evidence Plaintiff can present to show that the reasons were pretextual. [Doc. 160-1 at 6-8, 14-15]. In the event that the District Judge disagrees with the recommendation to dismiss Plaintiff's discriminatory-transfer claims for failure to establish a *prima facie* case of discrimination, the undersigned also addresses the parties' contentions regarding pretext.

Under the *McDonnell-Douglas* framework, if a plaintiff establishes a *prima facie* case, she has created an inference of discrimination, and the defendant has the burden

AO 72A
(Rev.8/8
2)

of articulating a legitimate, non-discriminatory reason for its employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). This burden is "exceedingly light." *Holifield*, 115 F.3d at 1564. "[T]he defendant must merely proffer non-[discriminatory] based reasons, not prove them." *Meeks v. Computer Assocs. Int'l.*, 15 F.3d 1013, 1019 (11th Cir. 1994). That is, the employer must only introduce admissible evidence to support the challenged employment actions. *Burdine*, 450 U.S. at 254-55. "Although this burden is not onerous, . . . neither is it a mere formality." *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998) (quoting *Burdine*, 450 U.S. at 253). At this stage, a defendant-employer must:

> clearly set forth, through the introduction of admissible evidence, the reason for its adverse employment decision, and that reason must be legally sufficient to justify a judgment for the defendant.

*Id*. (quoting *Burdine*, 450 U.S. at 253). The Eleventh Circuit has held that there must be "evidence that asserted reasons for discharge were actually relied on or the reasons are not sufficient to meet defendant's rebuttal burden." *IMPACT v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (quoting *Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 775 (11th Cir. 1982)).

If the defendant meets this light burden, then the inference of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity in which the plaintiff

38

must show that the proffered reason really is a pretext for unlawful discrimination." *Brooks*, 446 F.3d at 1162 (quoting *Joe's Stone Crabs, Inc.*, 296 F.3d at 1272); *Holifield*, 115 F.3d at 1565. Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson*, 376 F.3d at 1088 (quoting *Burdine*, 450 U.S. at 253).

Defendant asserts the following undisputed facts in support of its argument that it transferred Plaintiff for legitimate nondiscriminatory reasons. First, the Senior Appraiser that had been assigned to the North District was terminated in or around November 2009, which left a void in the Senior Appraisal staff needed in the North District, (D ¶¶ 102-03; P. Resp. ¶¶ 102-03). [Doc. 160-1 at 7]. The North District only had one other Senior Appraiser at that time, and the Appraisal Manager of the North District requested an experienced Senior Appraiser because of the workload and complexity of the properties in that area, (D ¶ 104; P. Resp. ¶ 104). [Doc. 160-1 at 7]. Second, during his first year of employment as Deputy Chief Appraiser, Kirkpatrick had been unsatisfied with the performance and work product produced by staff in the 14th Region, (D ¶ 105; P. Resp. ¶ 105). [Doc. 160-1 at 7]. Appraisers in that region had a long history of disreputable practices such as "sales chasing," unwarranted grade and

AO 72A
(Rev.8/8
2)

condition changes, and adding cost and design factors to unremarkable structures known as "shotgun houses," (D ¶ 106; P. Resp. ¶ 106). [Doc. 160-1 at 7]. In response to these practices, Kirkpatrick ordered McGruder, the manager of the 14th District, to discontinue such practices and produce 2009 valuations that conformed to acceptable appraisal practices, (D ¶ 107; P. Resp. ¶ 107). [Doc. 160-1 at 7-8]. When the 2009 product did not fully conform to these directives, McGruder was dismissed, (D ¶ 108; P. Resp. ¶ 108). [Doc. 160-1 at 8]. Following McGruder's dismissal, Kirkpatrick reassigned Plaintiff to the North District and made other reassignment decisions, (D ¶ 110; P. Resp. ¶ 110). [Doc. 160-1 at 8]. Defendant also points out that at the time Plaintiff applied to work for Defendant in November 1995, she understood there was a possibility that she could be reassigned, (D ¶ 58; P. Resp. ¶ 58), and she was also aware of the possibility of reassignment when she applied for the position of Senior Appraiser in June 2005, (D¶ 60; P. Resp. ¶ 60). [Doc. 160-1 at 6].

The Court finds that this evidence is sufficient to meet Defendant's light burden of production of evidence showing legitimate nondiscriminatory reasons for Plaintiff's transfer. The burden therefore returns to Plaintiff to establish that (or at this stage at least show a genuine issue of material fact as to whether) Defendant's articulated reasons for her transfer are pretextual. Plaintiff's "prima facie case, combined with

40

sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). If, however, "the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024-25 (emphasis added).

In her response brief, Plaintiff does not rebut Defendant's legitimate nondiscriminatory reasons for the transfer. [*See* Doc. 210-1, *passim*]. Instead, Plaintiff simply states that Defendant "has not proffered actionable evidence in support of its alleged 'legitimate, non-discriminatory reasons' " and that she "has presented significantly probative evidence of pretext."[12] [*Id.* at 2].

"Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its action."

---

[12] Plaintiff also points out that "there were other equally qualified personnel available." [Doc. 210-1 at 7]. This statement does not appear in the statements of material fact, however. Consequently, the Court disregards the assertion. *See* LR 56.1B(1)(d), NDGa ("The court will not consider any fact . . . set out only in the brief and not in the movant's statement of undisputed facts.").

AO 72A
(Rev.8/8
2)

*Carter*, 870 F.2d at 585 (internal punctuation omitted).  Here, because Plaintiff has offered only the most general assertion regarding pretext, the undersigned finds that she has not proffered "sufficient evidence from which a jury could have concluded that the reasons articulated by [Defendant] were merely a pretext for discrimination or that a discriminatory reason more likely motived the employer."  *See id.*

Accordingly, the undersigned **RECOMMENDS** to the District Judge that he may alternatively **GRANT** Defendant's motion for summary judgment on the claims arising from Plaintiff's transfer on the grounds that Defendant has shown legitimate nondiscriminatory reasons for the transfer and Plaintiff has failed to raise a genuine issue of material fact as to pretext.

## V.      *Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment as to all of the claims raised by Plaintiff Smalls.  [Doc. 160].

Reports and Recommendations on the remaining pending summary-judgment motions will be forthcoming under separate cover.

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED**, this the 28th day of January, 2013.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)